## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL CENTER FOR YOUTH LAW<br>2300 18th St., N.W.<br>P.O. Box 21156<br>Washington, D.C. 20006<br><br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION<br>400 Maryland Ave., S.W.<br>Washington, DC 20202,<br><br><br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)        Civ. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

1. From the very start of the second Trump Administration, the President and the Department of Education ("Department" or "Defendant") have taken a series of action to dismantle the Department, including its Office for Civil Rights ("OCR").[1]  Within days of the start of the Administration, the Department froze the processing and investigation of all civil rights complaints.[2]  While that freeze was lifted in the following weeks, the Department soon issued a

---

[1] *See* Dana Goldstein, *Could Trump Shut Down the Department of Education?*, N.Y. Times (Nov. 13, 2024), https://www.nytimes.com/2024/11/13/us/trump-close-department-of-education.html; Michael C. Bender, *Asked if U.S. Needs Education Department, Its Head Says 'No'*, N.Y. Times (Mar. 7, 2025), https://www.nytimes.com/2025/03/07/us/politics/education-department-mcmahon-trump.html.
6 U.S. Dep't of Educ., *U.S. Department of Education Launches "End DEI" Portal* (Feb. 27, 2025)

[2] Jennifer Smith Richards & Jodi S. Cohen, *"We've Been Essentially Muzzled": Department of Education Halts Thousands of Civil Rights Investigations Under Trump*, ProPublica (Feb. 13, 2025), https://www.propublica.org/article/department-of-education-civil-rights-office-investigations.

reduction in force that drastically lowered the OCR workforce.[3]  It also shuttered seven of OCR's twelve regional offices, a move that further undermined OCR's ability to effectively handle civil rights complaints.

2.    The elimination of OCR offices and staff had the purpose and effect of preventing OCR from fulfilling its statutory and regulatory functions to enforce civil rights in schools. As Former Assistant Secretary Lhamon reported to ProPublica: "What you've got left is a shell that can't function."[4]

3.    Children and families are the ones most victimized by these actions.  OCR is charged with "ensur[ing] equal access to education and [] promot[ing] educational excellence through vigorous enforcement of civil rights in our nation's schools."[5] For decades, as part of this crucial mandate and in accordance with federal law, including Title VI of the Civil Rights Act of 1964 ("Title VI"), Title IX of the Education Amendments of 1972, as amended ("Title IX"), Section 504 of the Rehabilitation Act of 1973, as amended ("Section 504"), and Title II of the Americans with Disabilities Act ("Title II") and their implementing regulations,[6] OCR has received, investigated, and resolved complaints submitted by members of the public alleging discrimination on the basis of race, sex, disability, and other protected characteristics. This service is available without financial cost to students and families. Students and families' ability to have their civil rights

---

[3] Press Release: U.S. Dep't of Educ., *U.S. Department of Education Initiates Reduction in Force* (Mar. 11, 2025), https://bit.ly/42fXyf8; *see also* Michael C. Bender & Dana Goldstein, *Education Department Fires 1,300 Workers, Gutting Its Staff*, N.Y. Times (Mar. 11, 2025).

[4] *See* Jodi S. Cohen & Jennifer Smith Richards, *Massive Layoffs at the Department of Education Erode Its Civil Rights Division*, ProPublica (Mar. 12, 2025), https://www.propublica.org/article/education-department-civil-rights-division-eroded-by-massive-layoffs.

[5] U.S. Dep't of Educ., *Office for Civil Rights (OCR)* (Jan. 19, 2025), https://www.ed.gov/about/ed-offices/ocr; *see also* Kristen A. Graham, Susan Snyder & Maddie Hanna, *What the Department of Education Cuts Mean for Local Schools*, Philadelphia Inquirer (Mar. 12, 2025), https://www.inquirer.com/education/us-education-department-cuts-trump-administration-20250312.html.

[6] 34 C.F.R. Part 100, 34 C.F.R. Part 106, 34 C.F.R. Part 104, and 28 C.F.R. Part 35, respectively.

complaints thoroughly reviewed in a prompt, impartial, and non-discriminatory manner is integral to the mission of OCR. In 2024 alone, OCR received 22,687 complaints from the public.[7]

4.    These harms have not been felt equally by all students.  Students of color and LGBTQ+ students have been particularly targeted by the Administration.  For example, on January 29, 2025, President Trump signed the "Ending Radical Indoctrination in K-12 Schooling" executive order, directing federal agencies to withhold federal funding from institutions that directly or indirectly promote "discriminatory equity ideology"—including through policies that recognize and ameliorate racial discrimination—under the guise of enforcing compliance with Title VI.[8]. And then on February 5, 2025, President Trump signed the "Keeping Men Out of Women's Sports" executive order, directing federal agencies to rescind all funds from educational programs and institutions that allow transgender students to participate on sports teams aligning with their gender identity.[9]

5.    OCR also took steps to target these populations.  For example, on February 14, 2025, OCR issued a Dear Colleague letter regarding its interpretation of civil rights law and intended enforcement under Title VI and the Equal Protection Clause."[10]  The letter alleged that in recent years U.S. educational institutions have discriminated against white students and contorts civil rights law to command the dismantling of protections for students of color.  And at the same time

---

[7] U.S. Dep't of Educ., Office for Civil Rights, *2024 Fiscal Year Annual Report: Report to the President and Secretary of Education* (2024) at 8, https://www.ed.gov/media/document/ocr-report-president-and-secretary-of-education-2024-109012.pdf.

[8] Exec. Order No. 14190, 90 Fed. Reg. 8853 (Jan. 29, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/01/ending-radical-indoctrination-in-k-12-schooling/.

[9] No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/02/keeping-men-out-of-womens-sports/.

[10] U.S. Dep't of Educ., *Dear Colleague Letter: Title VI of the Civil Rights Act in Light of Students for Fair Admissions v. Harvard* (Feb. 14, 2025), https://www.ed.gov/media/document/dear-colleague-letter-sffa-v-harvard-109506.pdf.

that the investigation of discrimination complaints was frozen, OCR affirmatively opened selected investigations targeting programs and actions designed to combat discrimination against students of color and LGBTQ+ students and to provide them with equal access to educational opportunities. Many are "directed investigations," meaning they were initiated by the agency, rather than by individual students and their families and advocates.

6.     Additionally, on February 27, 2025 OCR launched an "End DEI" (short for "End Diversity, Equity, and Inclusion") portal. The portal purports to collect "reports of discrimination based on race or sex in publicly-funded K-12 schools" from parents, students, teachers, and the broader community.[11] The press release announcing the portal made clear that the goal was to solicit information for use in potential investigations targeting programs designed to combat discrimination against LGBTQ+ students and students of color and provide them with equal access to educational opportunities. Tiffany Justice, Co-Founder of Moms for Liberty, explained that the Department was soliciting information about the use of "critical race theory"—a reference to the recognition of systemic racism against people of color in society—and "rogue sex education and divisive ideologies"—a reference to recognizing and affirming the identities of LGBTQ+ people— in public schools for the purpose of "identify[ing] potential areas for investigation."[12]

7.     ED has also taken steps to undermine the critically important research and data collections conducted by the Department and OCR.  The Department has canceled nearly $1 billion in contracts administered by the Institute of Education Sciences ("IES"), which threatens to end important educational research projects.

8.     Similarly, OCR has failed to release data from the Civil Rights Data Collection ("CRDC"), a mandatory biannual survey that gathers civil rights data from public schools.  The

---

[11] U.S. Dep't of Educ., *U.S. Department of Education Launches "End DEI" Portal* (Feb. 27, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-launches-end-dei-portal.

[12] *Id.*

CRDC is a universal collection covering nearly every school and district in the nation. The data is used to ensure all students have equal access to education, regardless of race, gender, disability, or other protected traits.  Without access to this data, families, advocates, school districts, and other stakeholders are less able to take corrective action when appropriate.  Equally important, the data from the CRDC is also used by researchers and policymakers to reveal serious racial differences in educational opportunity including those that may inform changes to policies and practices. The CRDC data may also provide evidence of unlawful discrimination including, but not limited to, unlawful segregation, harassment, the denial of equal access to educational programs, blatantly different treatment, and the failure of school leaders to otherwise meet their obligation to protect students from systemic discrimination based on race, disability, English Learner status, gender or national origin.  OCR has failed to release CRDC data for the 2023-2024 school year.

9.     To better understand the nature of these wholesale changes to the Department and their impacts on vulnerable students, on March 3, 2025, Plaintiff National Center for Youth Law, a not-for-profit organization that advocates on behalf of children and students, filed three Freedom of Information Act ("FOIA") requests.  It filed a fourth request on April 29, 2025, for the data collected in  the Civil Rights Data Collection (CRDC) for the 2023-2024 academic year.

10.   Over a year has passed since Plaintiff submitted its FOIA requests, and Defendant has failed to make a determination on any of them.  Plaintiff therefore seeks an order directing Defendant to immediately begin searching for, processing and producing all non-exempt records responsive to its requests.

<strong><u>JURISDICTION AND VENUE</u></strong>

11.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

5

12.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

13.     Because Defendant has failed to comply with the applicable time-limit provisions of FOIA, Plaintiff is deemed to have exhausted their administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to an order requiring Defendant to process their FOIA request.

## PARTIES

14.     Since 1971, Plaintiff National Center for Youth Law, a Section 501(c)(3) organization, has pursued a vision in which every child—no matter their race, family background, gender identity, or immigration status—has the freedom, support, and power to thrive.  Using law, policy, research, and community partnerships, all guided by young people's experiences, the National Center for Youth Law works to transform public systems, to strengthen families and communities, to promote equity, opportunity and dignity, and to pursue accountability and justice.

15.     Defendant United States Department of Education is an agency within the meaning of 5 U.S.C. § 552(f)(1), has possession and control of the requested records, and is responsible for fulfilling Plaintiff's FOIA request.

## STATUTORY FRAMEWORK

16.     The FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules ... shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

17.     Upon receipt of a FOIA request, an agency must make a determination whether to comply with it and to notify the requester of that determination within twenty days of receipt of a request, excluding Saturdays, Sundays, and legal public holidays. 5 U.S.C. § 552(a)(6)(A)(i).

6

18.     Agencies shall grant requesters requests for expedited processing of their FOIA requests when they demonstrate "compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I). "Compelling need" requires the requestor to show that they are "a person primarily engaged in disseminating information" with an urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

19.     A determination of whether to provide expedited processing shall be made and notice of the determination shall be provided to the person making the request within 10 days after the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

20.     Agency action to deny a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request, is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

21.     After a FOIA request is received by an agency, it must "make reasonable efforts to search for the records." 5 U.S.C. § 552(a)(3)(C). If the agency identifies any responsive records, the agency must make them "promptly available." *Id.*

22.     If an agency fails to make a determination within the prescribed time frame, requesters are deemed to have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

23.     The FOIA further provides that records shall be furnished without charge, or at a reduced charge, when disclosure is likely to contribute significantly to public understanding of government operations or activities and is not primarily in the requester's commercial interest. 5 U.S.C. § 552(a)(4)(A)(iii).

## STATEMENT OF FACTS

### Request 1

7

24. As noted above, early in the second Trump Administration, the President and the Department issued, respectively, Executive Orders and Dear Colleague Letters purporting to protect female students from "gender ideology extremism," bar transgender girls from participating in sports at school, sanction discrimination based on gender identity, and challenge the use of diversity, equity and inclusion to combat forms of historical discrimination, policies that impact the lives of students throughout the country.

25. In addition, the Defendant made substantial cuts in the Office of Civil Rights (OCR) staff, which would likely lead to diminished civil rights enforcement.

26. As a result, on March 3, 2025, Plaintiff filed a federal FOIA request with the Department of Education, seeking four categories of records. The first sought data on the numbers of open, pending and closed OCR investigations and efforts to delay or close such investigation. The second sought records showing changes to the Defendant's Case Processing Manual. The third sought records related to the EndDEI.Ed.gov portal. The fourth sought lists of probationary OCR employees and communications about them. The full request is attached as Exhibit A.

27. By letter dated March 6, 2025, Defendant assigned the request 25-02655-F. The letter stated it required no further information and that the average processing time was 185 days.

28. In its March 3, 2025, FOIA request, Plaintiff sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A). Exhibit A. It stated that disclosure of the requested information is in the public interest because it would shed light on the operations or activities of the government. It further stated that the records were not sought for commercial purposes and that it intended to distribute the records and information contained in them to other educational institutions and the public at no charge.

29.    In addition, Plaintiff explained that it is a representative of the news media.  It gathers information of potential interest to the public and distributes it at no cost to interested parties.

30.    Defendant has not decided Plaintiff's request for a fee waiver.

31.    Plaintiff also included in its March 3, 2025, submission a request for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). *See* Exhibit A.

32.    It sought expedited processing of this request because: (1) there is an "urgency to inform the public about an actual or alleged Federal Government activity" by organizations, "primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(i) & (v)(II); (2) the request concerns "[t]he loss of substantial due process rights," 5 U.S.C. § 552(a)(6)(E)(ii); and (3) the request concerns "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 5 U.S.C. § 552(a)(6)(E)(ii).

33.    Further, Plaintiff sought records concerning a matter of great urgency.  Children, families, and stakeholders who advocate on their behalf need to understand how these policy changes impact the Department's investigatory and enforcement approach to discrimination experienced by students and what these students might do to protect their rights and services.

34.    The Defendant denied Plaintiff's request for expedited processing in its March 6, 2025 acknowledgment letter.

35.    As of the date of filing this Complaint, Defendant has not further responded substantively to Plaintiff's March 3, 2025 request.

36.    More than twenty days have passed since Plaintiff submitted its request, and Defendant has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

37.    As a result, Plaintiff has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i), and seeks immediate judicial review.

### Request 2

38.    On January 29, 2025, President Trump issued Executive Order 14190, "Ending Radical Indoctrination in K-12 Schooling," which aims to address alleged concerns about the "indoctrination" of students with ideologies deemed "radical" and "anti-American," and attempts to restrict any discussions on race, gender, and LGBTQ+ issues in school.

39.    To understand the scope of the Order and the impact it may have on the children that the Plaintiff seeks to serve, Plaintiff filed a federal FOIA request with the Defendant on March 3, 2025.

40.    The Plaintiff's request sought records pertaining to the Executive Order and communications between agency officials within the Office of the Secretary and the Office for Civil Rights and a number of outside organizations and individuals.  A copy of the full request is attached as Exhibit B.

41.    By letter dated March 6, 2025, Defendant assigned the request 25-02656-F.  The letter stated it required no further information and that the average processing time was 185 days.

42.    In its March 3, 2025, FOIA request, Plaintiff sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A).  Exhibit B.  It stated that disclosure of the requested information is in the public interest because it would shed light on the operations or activities of the government.  It further stated that the records were not sought for commercial purposes and that it intended to distribute the records and information contained in them to other educational institutions and the public at no charge.

43.      In addition, Plaintiff explained that it is a representative of the news media.  It gathers information of potential interest to the public and distributes it at no cost to interested parties.

44.      Defendant has not decided Plaintiff's request for a fee waiver.

45.      Plaintiff also included in its March 3, 2025, submission a request for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). *See* Exhibit B.

46.      It sought expedited processing of this request because: (1) there is an "urgency to inform the public about an actual or alleged Federal Government activity" by organizations, "primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(i) & (v)(II); (2) the request concerns "[t]he loss of substantial due process rights," 5 U.S.C. § 552(a)(6)(E)(ii); and (3) the request concerns "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 5 U.S.C. § 552(a)(6)(E)(ii).

47.      Further, Plaintiff sought records concerning a matter of great urgency.  Children, families, and stakeholders who advocate on their behalf need to understand the scope and implementation of the Executive Order and how it impacts their rights and the services they seek or receive.

48.      As of the date of filing this Complaint, Defendant has not further substantively responded to Plaintiff's March 3, 2025 request.

49.      More than twenty days have passed since Plaintiff submitted its request, and Defendant has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

50.      As a result, Plaintiff has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i), and seeks immediate judicial review.

**Request 3**

11

51.     Early in the Second Trump Administration, the Defendant made substantial cuts to IES.  According to the Department of Education website, IES is "the nation's leading source for rigorous, independent education research, evaluation, and statistics."[13]  In particular, news reports stated that the Defendant had terminated nearly 100 IES contracts worth about a billion dollars.

52.     As a result, on March 3, 2025, Plaintiff filed a federal FOIA request with the Defendant for records relating to IES grants, contracts and cooperative agreements entered into or terminated since January 20, 2025.  A copy of the full request is attached as Exhibit C.

53.     By letter dated March 6, 2025, Defendant assigned the request 25-02658-F.  The letter stated it required no further information and that the average processing time was 185 days.

54.     In its March 3, 2025, FOIA request, Plaintiff sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A).  Exhibit C.  It stated that disclosure of the requested information is in the public interest because it would shed light on the operations or activities of the government.  It further stated that the records were not sought for commercial purposes and that it intended to distribute the records and information contained in them to other educational institutions and the public at no charge.

55.     In addition, Plaintiff explained that it is a representative of the news media.  It gathers information of potential interest to the public and distributes it at no cost to interested parties.

56.     Defendant has not decided Plaintiff's request for a fee waiver.

57.     Plaintiff also included in its March 3, 2025, submission a request for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). *See* Exhibit C.

58.     It sought expedited processing of this request because: (1) there is an "urgency to inform the public about an actual or alleged Federal Government activity" by organizations,

---

[13] https://ies.ed.gov/ (last visited June 9, 2026).

"primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(i) & (v)(II); (2) the request concerns "[t]he loss of substantial due process rights," 5 U.S.C. § 552(a)(6)(E)(ii); and (3) the request concerns "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 5 U.S.C. § 552(a)(6)(E)(ii).

59.     Further, Plaintiff sought records concerning a matter of great urgency.  Children, families, and stakeholders who advocate on their behalf need to understand the scope and implementation of these terminations to assess how they may impact their rights and the services they seek or receive.

60.     The Defendant did not decide Plaintiff's request for expedited processing.

61.     As of the date of filing this Complaint, Defendant has not further substantively responded to Plaintiff's March 3, 2025 request.

62.     More than ten days have passed since Plaintiff's request for expedited processing. Defendant has therefore failed to comply with 5 U.S.C. § 552(a)(6)(E)(ii)(1).

63.     More than twenty days have passed since Plaintiff submitted its request, and Defendant has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

64.     As a result, Plaintiff has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i), and seek immediate judicial review.

### Request 4

65.     For more than five decades, the Department's Civil Rights Data Collection (CRDC) has captured data on students' equal access to educational opportunities to understand and inform schools' compliance with the civil rights laws enforced by the Department's Office for Civil Rights.

66.    According to the Department's website, "OCR uses data from the CRDC to inform investigations, policy guidance and technical assistance to school districts and schools.  Other ED offices and federal agencies, policymakers and researchers, educators and school officials, parents and students, and the public also use the CRDC as a valuable resource for understanding students' access to educational opportunities in our nation's public schools."[14]

67.    On April 29, 2025, Plaintiff filed a federal Freedom of Information Act request with the Defendant requesting "(1) All the data collected pursuant to the Civil Rights Data Collection (CRDC) for the 2023-2024 academic year and (2) All the data notes and, if applicable, data notes appendix that currently exist for the 2023-2024 CRDC collection.

68.    On May 19, 2025, the Defendant acknowledged receipt of the request and assigned it number 25-03685-F.   The letter stated it required no further information.

69.    In its April 29, 2025 request, Plaintiff sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A).   It stated that disclosure of the requested information is in the public interest because it would shed light on the operations or activities of the operations and activities of our public schools, especially at the school and local district levels.  Moreover, the request stated that after each collection year the discipline data that are part of the request are used by each state to formulate the state and local report cards required by the Every Student Succeeds Act. It further stated that the records were not sought for commercial purposes.

70.    Defendant has not decided Plaintiff's request for a fee waiver.

71.    As of the date of filing this Complaint, Defendant has not further substantively responded to Plaintiff's April 29, 2025 request.

72.    More than twenty days have passed since Plaintiff submitted its request, and Defendant has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

---

[14] https://civilrightsdata.ed.gov/ (last visited June 9, 2026).

73.    As a result, Plaintiff has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i), and seek immediate judicial review.

## PLAINTIFF'S CLAIMS

### Count I (Failure to Grant Expedited Processing)

74.    Plaintiff repeats and realleges paragraphs 1-73 as if they were fully set forth herein.

75.    Pursuant to the FOIA, Plaintiff sought expedited processing of its March 3, 2025 requests (Requests 1-3).

76.    As an organization with a mission to uncover and reveal to the public the activities of the federal government as it pertains to the children they serve, Plaintiff is actively engaged in disseminating information. The records sought address matters of great importance and urgency to children whose federal rights the Defendant had traditionally protected and enforced.  The Executive Orders and Department letters threaten the government's continued investigation of alleged violations of these federal rights and enforcement of them to protect and benefit students with disabilities.

77.    Because Requests 1 and 2 were made by a person primarily engaged in disseminating information, and there was urgency to inform the public concerning actual or alleged Federal Government activity, Defendant's denial of the requests for expedited processing violated the FOIA.

78.    A determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(1).

79.    In violation of that statute, Defendant did not respond to Plaintiff's expedited processing request in Request 3 within 10 days, or at any time.

### Count II (Failure to Search for and Produce Requested Records and Failure to Respond to Request for Fee Waiver)

15

80.     Plaintiffs repeat and reallege paragraphs 1-73 as if they were fully set forth herein.

81.     In Requests 1-4, Plaintiff properly sought records within the custody and control of Defendant.

82.     Defendant wrongfully withheld agency records requested by Plaintiff by failing to make determinations on Plaintiff's requests within the statutorily prescribed time period of 20 business days, as required by 5 U.S.C. § 552(a)(6)(A), and by continuing to withhold documents that are non-exempt and responsive to Plaintiff's FOIA requests.

83.     Defendant's failure to grant Plaintiff's request for a waiver of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendant's corresponding regulations, 45 C.F.R. §§ 5.54 and 5.53(d)(1).

84.     Defendant's failure to grant Plaintiff's requests for a reduction of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and Defendant's corresponding regulations, 45 C.F.R. § 5.53(b) and (d)(1).

85.     Plaintiff has constructively exhausted its administrative remedies.

86.     Accordingly, Plaintiff is entitled to injunctive and declaratory relief requiring Defendant to immediately process and disclose all requested records to Plaintiff.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests this Court:

1.     Issue a declaration that Plaintiff is entitled to the immediate processing and disclosure of the requested records to it;

2.     Issue a declaration that Plaintiff is entitled to expedited processing of all requests for which it has sought such handling;

3.      Order the Defendant to preserve all records, in whatever form they exist, potentially responsive to Plaintiff's requests prior to and during the processing of its requests;

4.      Order Defendant to immediately process and disclose all responsive records to Plaintiff;

5.      Order Defendant to grant Plaintiff's request for fee waivers;

6.      Provide for expeditious processing of this action;

7.      Retain jurisdiction over this action to ensure that no agency records are wrongfully withheld;

8.      Award Plaintiff attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(F)(i); and

9.      Grant any other such relief that this Court may deem just and proper.


Dated: July 16, 2026                                        Respectfully submitted,

                                                     _/s/Jeffrey S. Gutman_____
                                                     Jeffrey S. Gutman, PLLC
                                                     (D.C. Bar No. 416954)
                                                     1712 Hobart St., N.W.
                                                     Washington, D.C. 20009
                                                     (202) 631-5129
                                                     jsgutmandc@gmail.com


                                                     *Counsel for Plaintiff*

17